18693

James Marion BROWN, Respondent, v. Gladys B. BROWN, Appellant
(156 S. E. (2d) 641)

*E. L. McGowan, Esq.,* of Columbia, *for Appellant,*

*Messrs. Edens, Woodward & Butler,* of Columbia, *for Respondent,*

August 22, 1967.

GEORGE T. GREGORY, JR., Acting Justice:

James Marion Brown, the respondent herein, instituted this action against his wife, Gladys B. Brown, appellant herein, for a divorce, *a vinculo matrimonii,* on the ground of physical cruelty. Section 20-101 (2) of the 1962 Code. The appellant denied the acts of physical cruelty and by way of cross-complaint (counterclaim) sought a divorce, *a mensa et thoro,* and support from the respondent on the ground of physical cruelty. The respondent denied that he was guilty of physical cruelty.

The matter was referred by the Richland County Court to the Master in Equity for Richland County, who, in his report of August 6, 1965, concluded that the evidence was not sufficient to grant the respondent a divorce, *a vinculo matrimonii,* on the ground of physical cruelty or the appellant a divorce, *a mensa et thoro,* on the ground of physical cruelty. He found that the testimony of the parties as to the various acts of physical cruelty complained of was inconsistent and that there was no corroborating testimony presented by either party to substantiate them other than the testimony of a policeman as to certain scratches on the face of the respondent. The master further concluded that the respondent be required to pay Twenty Five and No/100 ($25.00) Dollars per week to the appellant towards her support, continue to make mortgage and utility payments on the dwelling occupied by the appellant, permit appellant the use of an Opel automobile then in her possession, and pay additional attorney's fees to appellant's counsel.

The appellant served Exceptions to the report of the Master in Equity on the grounds that the Master in Equity erred in denying the appellant's prayer for relief, including a divorce, *a mensa et thoro,* erred in awarding the nominal sum of Twenty Five and No/100 ($25.00) Dollars per

week for her support and maintenance; erred in failing to make any provision as to the responsibility of the respondent for maintenance, insurance, and taxes on the dwelling and on the Opel automobile; and erred in failing to make any provision as to the disposition of the furniture in the dwelling.

The respondent served Exceptions to the report of the Master in Equity on the grounds that the Master in Equity erred in concluding that corroboration of testimony was necessary where no suggestion of collusion is present; erred in failing to find that the evidence submitted was sufficient to substantiate respondent's charges of physical cruelty as a ground; erred in finding that the respondent should continue paying Twenty Five and No/100 ($25.00) Dollars per week as support and maintenance; erred in finding that appellant retain possession and use of the Opel automobile; and erred in awarding an additional attorney's fee for appellant's counsel.

The decree of the Senior Judge, Richland County Court, dated July 13, 1966, granted to the respondent a divorce, *a vinculo matrimonii,* from the appellant and in lieu of alimony or support in any other form, and in full, final, and complete satisfaction of the appellant's right to alimony, the respondent was directed to convey to the appellant all of respondent's right, title and interest in and to the dwelling house occupied by the appellant and also the Opel automobile and to pay the costs and expenses of the action including the sum of Five Hundred and No/100 ($500.00) Dollars to appellant's attorneys.

The wife has appealed from the foregoing judgment. The Exceptions challenge (1) the sufficiency of the evidence to support the findings of the lower court as to physical cruelty, and (2) the sufficiency of the evidence to support the granting as alimony to the appellant all the respondent's right, title, and interest in and to the dwelling house in the absence of testimony or evidence as to the principal indebtedness outstanding or physical condition of the premises.

A consideration of the Exceptions which challenge the factual findings of the lower court that the husband established the charges of physical cruelty will dispose of this case. Since this is an equity case, it is necessary that we review the evidence to determine whether or not such findings are supported by the preponderance of the evidence. It is now well settled that this court has jurisdiction in appeals in equity cases to find the facts in accord with our view of the preponderance of the evidence, in the absence of a verdict by the jury; and may reverse a factual finding by the lower court in such cases when the appellant satisfies this court that the finding is against the preponderance of the evidence. *Crowder v. Crowder,* 246 S. C. 299, 143 S. E. (2d) 580.

The parties were married January 17, 1956, in Columbus, Georgia. The husband was then in the military service. Although no children were born of this marriage, the wife does have one child by a prior marriage. This child has reached his majority and no longer resides with his mother. The parties have lived in Columbia, South Carolina, since December 1963. The husband retired from the Army on November 30, 1964, with the rank of Major with a retirement income of Three Hundred Ninety Eight and 16/100 ($398.16) Dollars gross, Three Hundred Fifty Eight and 16/100 ($358.16) Dollars net. Shortly after his retirement from the Army the husband began working as a real estate agent and had been in this occupation for almost six months when he instituted this action for divorce. The parties lived together in a home purchased by the husband until March 7, 1965, when he left and rented an apartment. The husband claims that acts of physical cruelty inflicted upon him by his wife prompted and caused his departure. This is denied by the wife.

The record reveals marital difficulties and discord between the parties. In 1960 the wife instituted an action for divorce on the ground of physical cruelty but the parties reconciled and reestablished their marriage relationship.

According to both, pastoral counseling was futile. The husband testified that sessions with the pastor were not successful because his wife refused to comply with the suggestions offered. He stated that the pastor referred to the marriage as utterly hopeless. The wife's version differed. She contended that the husband was not cooperative. Neither party chose to call the pastor to testify and corroborate the claim of each of a hopeless marriage caused by the failure of the other to cooperate with the pastor, or to explain why he was not called.

The particular acts of physical cruelty alleged by the husband against the wife occurred on March 5 and 6, 1965. On March 5, 1965, he was allegedly attacked by the wife and subjected to physical abuse while attempting to make a telephone call. He testified that when he arrived home he noticed a bedroom rug was missing and she told him that she had sent the rug out for cutting to fit another room. An argument ensued over the rug. The husband then went to make a telephone call and the wife went into the kitchen. According to the husband, the wife came into the hallway and took the telephone receiver from him and "imposed her body upon him restricting his freedom of movement". She refused to leave him alone and climaxed the attack by scratching him across the face. The wife testified that she was only attempting to go to the bedroom to pick up her purse and car keys; however, he was blocking the hallway that led to the bedroom so she pushed him aside to pass. She acknowledged that she scratched her husband but contended she did so only after he twisted her arm. After she obtained her purse and car keys she left the house and telephoned the police. She returned to the house but awaited in the car until the policeman arrived. The husband advised the police officer upon his arrival at the house that his wife probably had telephoned police headquarters but he had not. The husband was packing and preparing to leave. The wife came into the house and the policeman listened to both parties. He testified that he saw three or four fresh scratches on the hus-

band's face but the scratches were not serious. Neither party filed a complaint.

The next alleged incident of physical cruelty occurred March 6, 1965. The facts as testified to by the parties are hopelessly in conflict. The husband said that he returned to the house to pick up certain personal belongings and while there decided to cook a meal. The wife appeared and attempted to pour hot grease on him and then with a knife in each hand backed him into a corner. A scuffle ensued and the wife struck the husband in the head with a coke bottle causing a knot which although painful did not require medical attention.

The wife stated that she was in the kitchen making a cup of coffee when her husband arrived. He placed an iron skillet on the stove and turned the unit on high. It started smoking and she moved it off and turned the burner down. He put the skillet back on the burner with a piece of frozen meat and again turned the unit on high. This caused the meat juices to burn as it began to thaw. The skillet continued to smoke and she threw it into the sink. She testified that her husband threw her down on the floor breaking the back of a chair and injuring her back. She picked up two knives to protect herself but put them down when she realized what she was doing. The parties fought while on the floor but she testified that she did not remember anything about the coke bottle as claimed by the husband. She stated that she did not see a knot on his head. The wife claimed that as a result of the struggle her watch and glasses were broken.

We have not attempted to review all of the testimony. The parties are agreed that from the beginning of their marriage they had quarrels and disagreements. Each maintained that the other exhibited a course of conduct of cruelty throughout the marriage.

Is the evidence sufficient to establish the charge of physical cruelty to meet the requirement for a divorce on this ground, as such is defined in the case of *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163? We quote:

"Physical cruelty, as used in the divorce law, has generally been defined by our courts as actual personal violence, or such a course of physical treatment as endangers life, limb, or health, and renders cohabitation unsafe. With this definition, we are in accord. In determining what acts constitute cruelty under our statute authorizing a divorce, regard must be had, not only to the provisions of the statute, but also to the circumstances of each particular case.

"Continued acts of personal violence producing physical pain or bodily injury and fear of future danger are recognized as sufficient cause for a divorce for cruelty in nearly all jurisdictions, especially when accompanied by other acts of ill treatment. 27 C. J. S. Divorce § 26, page 549. It is not every slight violence, however, committed by the husband or wife against the other, even in anger, which will authorize a divorce." See also *Barstow v. Barstow*, 223 S. C. 136, 74 S. E. (2d) 541 and *Godwin v. Godwin*, 245 S. C. 370, 140 S. E. (2d) 593.

The courts seem to be particularly skeptical of the existence of fear or danger where a husky husband, in good health, is complaining of physical cruelty on the part of his frail consort. 1 Nelson on Divorce and Annulment, Section 6.18. See also *Barstow v. Barstow*, 223 S. C. 136, 74 S. E. (2d) 541.

We find it difficult to believe that the husband, who was five feet, eleven inches tall and weighed two hundred twenty pounds was put in fear for his life by his wife. If he was fearful of personal violence on March 5 or 6, 1965, why did not he call the police? Once, the policeman was summoned by the wife on March 5, 1965, he took no step toward lodging a complaint against his wife. He testified that he could have walked away from the altercations on both March 5 and 6, 1965. The record reasonably suggests that each party shared in the responsibility for provoking the difficulties, that neither was willing to turn the other cheek. Perhaps we could call it a case of mutual stubborn-

ness. Harmony between the parties is not automatic in marriage. The general unpleasantness of the wife is a risk assumed by the husband with marriage; however it is not a statutory ground for divorce.

The general rule is that a divorce will not be granted on the ground of physical cruelty when the acts of cruelty complained of were provoked by the misconduct of the complaining spouse. However, that there was some provocation will not disentitle a spouse to relief if the retaliatory cruelty complained of was out of proportion to the provoking conduct. *Godwin v. Godwin,* 245 S. C. 370, 140 S. E. (2d) 593. A careful review of the evidence in this case convinces us that the mutual provocations of the parties met retaliatory cruelty in kind.

The burden was upon the husband to establish by the preponderance of the evidence the charges of physical cruelty against the wife. This carried with it the necessity of presenting corroboration of the material allegations of his complaint or an explanation for its absence. *McLaughlin v. McLaughlin,* 244 S. C. 265, 136 S. E. (2d) 537; *Crowder v. Crowder,* 246 S. C. 299, 143 S. E. (2d) 580. The rule requiring corroboration is not inflexible, and may be relaxed where the circumstances of the particular case so warrants. *McLaughlin v. McLaughlin, supra.*

The testimony offered by the husband in corroboration in this case was limited to the policeman called by the wife on the night of March 5, 1965, and he testified only as to the slight scratches on the husband's face. The husband offered nothing else in corroboration of his testimony as to physical cruelty on the part of the wife, nor did he attempt to explain the absence of such corroboration.

While we are reluctant to reverse the factual findings of the trial court, we feel compelled to do in this case. The husband has failed to establish by the preponderance of the evidence that his wife has been guilty of physical cruelty within the meaning of our divorce statute and

the testimony is lacking in corroboration under the particular circumstances of this case.

We conclude that the lower court was in error in granting a divorce to the husband on the grounds of physical cruelty. The property settlement based upon the divorce is also reversed.

Reversed.

Moss, C. J., LEWIS and BUSSEY, JJ., and LIONEL K. LEGGE, Acting J., concur.