1598

Irene Frances Morrah INGOLD, Respondent v.
Ernest John INGOLD, Appellant.

(404 S.E. (2d) 35)

Court of Appeals

*Adam Fisher, Jr.*, Greenville, *for appellant.*

*J.D. Todd, Jr.*, Greenville, *for respondent.*

Heard Dec. 12, 1990; Decided Jan. 21, 1991.

Rehearing Denied April 9, 1991.

CURETON, Judge:

The appellant-father appeals the family court's order reducing his visitation rights and denying him attorney fees, expenses, and costs. We reverse and remand to the family court.

The parties were divorced in Boulder, Colorado, in August 1985. They have one child, Edna, who was born in September 1981. At the time of the divorce the parties agreed the respondent-mother would have custody of Edna with liberal visitation to the father. The agreement, which was incorporated into the Colorado divorce decree, also provided:

> Because of the age of the child and the fact that the parties live in South Carolina and Colorado at this time, no specific provisions have been made at this time for ex-

tended summer and holiday visitation with the Husband. Until the child reaches the age of six, the parties agree that they will communicate and cooperate in arranging liberal visitation for the Husband which will be in the best interest of the child.

Once the minor child reaches the age of six, reasonable visitation shall include, at a minimum, one week with the Husband at Christmas or spring break/Easter vacation, alternating these vacations each year, and a minimum of six weeks during the summer vacation.

The Husband will provide reasonable notice of his intentions with regard to such visitation at least 30 days in advance, and shall pay the costs of transportation for the minor child for purposes of visitation.

The father moved to California in 1987. In April 1989, the mother filed a complaint in the Greenville County family court requesting a modification of the father's visitation schedule.[1] The mother alleged *inter alia* in her complaint that considering the husband's living arrangements in California in conjunction with Edna's age, a six week visitation period would adversely affect the child. Moreover, she alleged the husband voluntarily reduced his 1988 visitation with Edna to two weeks.

The father answered the mother's complaint insisting on "his rightful visitation." The father also requested reimbursement for travel expenses, costs, and attorney fees as a result of having to defend this action in South Carolina.

At the hearing before the trial court, the mother produced several witnesses who testified it would be in the child's best interest that she not be required to travel to California to visit with her father for six weeks. Among these witnesses was Martha Westrope, a clinical psychologist, who had seen the child for two one-hour counseling sessions. On cross-examination she equivocated, if not outright recanted, her opinion that six weeks of visitation would be harmful to Edna. She opined that not knowing the type of bonding between Edna and her father it would, however, be best to evaluate the child after three weeks with her father to see if she had problems and, if

---

[1] There is some dispute whether or not this request related only to the summer of 1989.

so, the visitation should be terminated. She admitted that if the child is ready for it, a six week visitation period could be very good for her.

In addition to the length of the visitation, the mother expressed some concern about the father's living arrangements. At the time of the hearing, the father lived with his girlfriend in a one bedroom apartment.[2] The father indicated to the court that if this bothered the court, the child could stay in his parents' home. He also agreed to not permit Edna to be in overnight visitation with someone not of his immediate family. Both parties agreed Edna had no problems during her 1988 visitation.

The court ruled a six week uninterrupted visitation period was too long for the child to be away from her mother and not in the best interest of the child. He reduced the visitation to three weeks, but gave the child the option of staying "an additional week or two." The court expressed serious concern about the moral aspects of the father's living arrangements. He ordered the father not to subject the daughter to any immoral influences including any overnight visitation with his girlfriend. The court denied the father's request for costs, expenses, and attorney fees and ordered each party to bear their own expenses and attorney fees.

The father petitioned the Supreme Court for a supersedeas which was granted. Edna visited the father for six week periods during the summers of 1989 and 1990. There is no indication these visitation periods had any harmful effect on her. Edna is now nine years old.

The decision to limit visitation rights is a matter addressed to the broad discretion of the trial court. *Nash v. Byrd*, 298 S.C. 530, 381 S.E. (2d) 913 (Ct. App. 1989); *cf. Roof v. Roof*, 298 S.C. 58, 378 S.E. (2d) 251 (1989) (trial court did not abuse its discretion in placing limitations on father's visitation rights). In the absence of a clear abuse of discretion, the trial court's decision to limit visitation rights of a parent will not be disturbed on appeal. *Nash*, 298 S.C. 530, 381 S.E. (2d) 913. In deciding to limit visitation, the best interest of the child is the paramount consideration. *Grimsley v. Grimsley*, 250 S.C. 389, 158 S.E. (2d) 197 (1967). Ordinarily, it is not in the best inter-

---

[2] The father's attorney stated without objection at oral argument that the father has now married his girlfriend.

est of a young child to be shifted back and forth between parents. Such an arrangement is likely to cause confusion, interfere with the proper training of the child, and make the child the basis of many quarrels between the parents. *See Bolick v. Bolick,* 297 S.C. 312, 376 S.E. (2d) 785 (Ct. App. 1989). Where, as here, the court has previously established a visitation, the moving party must show a change of circumstances to warrant a change of visitation. *McGregor v. McGregor,* 255 S.C. 179, 177 S.E. (2d) 599 (1970).

We find an insufficient change of circumstances to warrant a change in the father's visitation. First, the parties entered into an agreement in which they considered in detail the proper age at which Edna would begin her six week visitation with her father. Second, the agreement clearly contemplated the parties would live thousands of miles apart necessitating long distance travel by Edna. Third, in spite of the testimony of the wife's witnesses, the evidence does not support the mother's claim that a six week visitation period would adversely affect the welfare of Edna. Fourth, the father has apparently married his live-in girlfriend, thus rectifying any moral failing he may have had. Finally, the proof of the pudding is whether the 1989 visitation did in fact adversely affect Edna. The mother does not now claim the six week visitation period in 1989 was detrimental to Edna in any way. We therefore reverse the trial court on this issue. In doing so we recognize the sincere and earnest efforts the trial court and most trial judges put into deciding custody and visitation issues. The natural tendency, of course, is to err on the side of caution. We do not condemn that practice.

Finally the father argues the trial court erred in denying him expenses, costs, and attorney fees. Ordinarily, the award or denial of attorney fees is discretionary with the trial judge and his ruling thereon will not be disturbed on appeal absent an abuse of discretion. *Wood v. Wood,* 298 S.C. 30, 378 S.E. (2d) 59 (Ct. App. 1989). The same equitable considerations which apply to attorney fees also apply to costs. *Id.; Nienow v. Nienow,* 268 S.C. 161, 232 S.E. (2d) 504 (1977). Under the facts of this case, we believe the father is entitled to some reimbursement of expenses, costs, and attorney fees. Because the trial court may have based its denial of costs, expenses, and attorney fees on the fact the mother pre-

vailed at trial we remand these issues to the trial court for reconsideration.

Accordingly, the order of the trial court is reversed as to the reduction of the father's visitation. We remand the issues of the father's expenses, costs, and attorney fees for reconsideration consistent with the mandates of this opinion.

Reversed and remanded.

SHAW and BELL, JJ., concur.